FILED
2026 Sep-04 AM 10:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

**RACHEL JENKINS,**
Plaintiff,

**v.**

**BELK, INCORPORATED, *et al.*,**
Defendants.

**Case No. 1:25-cv-1155-CLM**

## MEMORANDUM OPINION

Around two years ago, Rachel Jenkins walked into a Belk department store to buy bedding. But her shopping plans were cut short when Belk employees stopped her and accused her of stealing. After the employees searched Jenkins and failed to find stolen items, Jenkins left the store humiliated.

In response to the encounter, Jenkins filed this lawsuit against Belk and its employees. Jenkins brings federal claims under 42 U.S.C. §§ 1981, 1983, and 1986, and state-law tort claims. Belk and Cordell moved to dismiss. For the reasons below, the court **DISMISSES** Jenkins' federal claims **WITH PREJUDICE**. And because the court is dismissing all claims over which it has original jurisdiction, the court declines to continue exercising supplemental jurisdiction over Jenkins' state-law claims and **DISMISSES** them **WITHOUT PREJUDICE**.

## BACKGROUND

Jenkins is a black woman who lives in Gadsden, Alabama. (Doc. 15 ¶¶ 1, 7-8, 13-14). Belk operates a retail department store in Gadsden, and Karla Cordell and Jane Doe 1[1] work at that store. (*Id.* ¶¶ 2–6).

[1] Jane Doe 1 is not named as a defendant or served and has not moved to dismiss. So this opinion addresses only the claims against Belk and Cordell. But because "fictitious-party pleading is not permitted in federal court," the court necessarily dismisses all claims against Jane Doe 1. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

On May 27, 2024, Jenkins entered the Gadsden Belk to shop for bedding. (*Id.* ¶¶ 9, 14). Jenkins carried bags from other stores—tied in knots, with receipts for the items inside. (*Id.* ¶¶ 11, 14). Jane Doe 1 approached and asked what Jenkins had in the bags that belonged to Belk. (*Id.* ¶ 9). Jane Doe 1 then required Jenkins to empty her bags, searched her belongings, and touched her property without permission. (*Id.* ¶¶ 10–11). Jenkins was stopped from leaving and believed she was not free to go. (*Id.* ¶¶ 15, 34). Cordell recorded information taken from Jenkins during the encounter. (*Id.* ¶ 6). No stolen items were found. (*Id.* ¶ 12). Jane Doe 1's only explanation for stopping Jenkins was that "[i]t has been a long day." (*Id.*) Jenkins left without completing her purchase. (*Id.* ¶ 26(f)). After the encounter, Jenkins sought medical treatment because she felt humiliated, anxious, depressed, and had high blood pressure. (*Id.* ¶ 18).

So Jenkins sued. She filed her original complaint on July 16, 2025. (Doc. 1). She then amended her complaint two times before serving Defendants. (*See* Docs. 2, 4). Once Belk and Cordell appeared, they moved to dismiss Jenkins' second amended complaint. (*See* Doc. 8). In response to that motion, Jenkins once again amended her complaint, so the court denied the original motion to dismiss as moot. (*See* Docs. 14, 15).

Jenkins' operative complaint asserts federal civil rights claims under 42 U.S.C. §§ 1981, 1983, and 1986, and state-law claims for false imprisonment, battery, harassment, negligence, negligent hiring and training, and respondeat superior. (*See* Doc. 15). Belk and Cordell move, once again, to dismiss under Rule 12(b)(6). (*See* Doc. 16).

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, this court accepts the factual allegations in Jenkins' operative complaint as true and construes them in the light most favorable to her. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is whether Jenkins' allegations, when accepted as true, plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But the court need

not accept legal conclusions as true simply because they are framed as factual allegations. *See id.* If the facts, taken as true, still do not entitle Jenkins to relief, the court must grant the motion.

## ANALYSIS

As discussed, Jenkins brings three federal claims and a host of state-law tort claims. The court walks through the claims in turn.

### I. Jenkins' federal claims fail.

#### A. Jenkins' § 1983 claims fail because she has not plausibly alleged state action.

To state a claim under § 1983, Jenkins must plausibly allege that Defendants "deprived [her] of a right secured by the Constitution or laws of the United States," and that they committed the alleged deprivation "under color of state law." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1276-77 (11th Cir. 2003). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* at 1277 (quoting *American Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). The Eleventh Circuit applies three tests to determine whether private conduct may be attributed to the state: (1) public function, (2) state compulsion, and (3) nexus or joint action. *Id.* Jenkins' allegations fail all three.

1. Public Function. "The public function test limits state action to instances where private actors are performing functions 'traditionally the exclusive prerogative of the state.'" *Focus on the Family*, 344 F.3d at 1277 (quoting *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993)). Jenkins says in her opposition to Defendants' motion that (1) Belk acted under color of state law because it operates under Alabama licenses and regulations and (2) Cordell acted under color of state law by serving as store-security personnel. (*See* Doc. 18, pp. 5-6). But neither of those functions are "traditionally within the exclusive prerogative of the state." *See Dykes v. Homesmart*, 2014 WL 12781335, at *3 (N.D. Ala. May 27,

2014) (finding that defendants were "not performing functions traditionally within the exclusive prerogative of the state" by operating a retail store). So Jenkins fails to allege facts that meet the public function test.

2. State Compulsion. "The state compulsion test limits state action to instances where the government 'has coerced or at least significantly encouraged the action alleged to violate the Constitution.'" *Focus on the Family*, 344 F.3d at 1277 (quoting *Willis*, 993 F.3d at 840). Even extensive state regulation does not convert private conduct into state action without a sufficiently close nexus between the state and the specific challenged conduct. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350-51 (1974).

Jenkins does not allege that any government actor coerced, directed, or significantly encouraged Belk or its employees to stop, question, search, or detain her. So Jenkins fails the state compulsion test too.

3. Nexus or Joint Action. Finally, "[t]he nexus/joint action test applies where 'the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise'" that deprived the plaintiff of her rights. *Focus on the Family*, 344 F.3d at 1277 (quoting *Willis*, 993 F.2d at 840). Jenkins pleads no facts showing an agreement, communication, preexisting plan, or coordinated action between Defendants and the state or local government. She alleges no police involvement, nor does she allege that a state actor participated in the encounter in any way. In *White v. Scrivner Corp.*, 594 F.2d 140, 141, 143-44 (5th Cir. 1979), store employees took shoppers to a backroom, searched their purses, called police, and caused an arrest. But the former Fifth Circuit still found no state action. *Id.* Jenkins doesn't even allege anything comparable to the facts in *White*. So her allegations fail to meet the nexus or joint action test.

In sum, Jenkins' factual allegations fail to show that Defendants acted under color of state law. As a result, the court will dismiss Jenkins' § 1983 claims.

### B. Jenkins' § 1981 claim fails because she has not plausibly alleged race causation or a contractual injury.

Section 1981 protects the right to make and enforce contracts free from racial discrimination. Unlike § 1983, it does not require state action. But to state a claim, Jenkins must plausibly allege intentional racial discrimination that caused a contractual injury, with race as the but-for cause. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021); *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 333, 340 (2020). Jenkins' claim fails on both elements.

First, Jenkins' race-causation allegations are thin. She alleges that she is black and that no similarly situated white customer was stopped, questioned, or searched. But she pleads no overt discriminatory action other than being stopped and searched, nor does she provide a concrete comparator showing that a similarly situated white customer was treated differently. *See Ziyadat*, 3 F.4th at 1296-97. Those omissions weigh against a plausible inference that race caused the encounter. That alone would support dismissal, but the claim independently fails for a second reason.

Even assuming discriminatory intent, Jenkins has not plausibly alleged interference with a protected contractual right. Section 1981 is not a general remedy for racial harassment during the contracting process. *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 892 (11th Cir. 2007). The plaintiff must show the loss of an actual contract interest. *Id.*

In *Lopez v. Target Corp.*, 676 F.3d 1230, 1234-35 (11th Cir. 2012), the Eleventh Circuit held that a customer who was mistreated during checkout but still completed his purchase on the same terms as other customers stated no § 1981 claim. Jenkins entered Belk intending to buy bedding and left without doing so—but she does not allege that Belk refused to sell her the bedding, blocked her from checking out, denied her service at a register, changed the price or terms, required a different payment method, ordered her to leave, or otherwise interfered with a

contractual right. The complaint describes a humiliating encounter. It does not describe a denied transaction.

Jenkins relies on *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862 (6th Cir. 2001), but that case involved concrete interference with a retail transaction: the customer had selected merchandise, was prepared to pay, and was escorted out before completing the purchase. *Id.* at 873–74, 879. Jenkins alleges no comparable impairment. So even under *Christian*, the complaint does not plausibly allege that Jenkins' race impaired a protected contractual right. So the court will dismiss Jenkins' § 1981 claim.

### C. Jenkins' § 1986 claim fails because she has not plausibly alleged an underlying § 1985 conspiracy.

Section 1986 is derivative of § 1985 and requires an underlying conspiracy among private actors to deprive Jenkins of her civil rights on account of race, though the § 1986 defendant need not personally join that conspiracy. *Park v. City of Atlanta*, 120 F.3d 1157, 1159-61 (11th Cir. 1997). Jenkins' complaint alleges that Belk employees stopped, questioned, searched, and detained her, but it pleads no agreement, communication, or coordinated plan to violate her civil rights. Without a plausibly alleged § 1985 conspiracy, her § 1986 claim necessarily fails. Thus, the court will dismiss Jenkins' § 1986 claim.

—

To sum up, each of Jenkins' federal claims fail. Because Jenkins has amended her complaint three times and further amendment would be futile, the court will dismiss each of Jenkins' federal law claims with prejudice.

## II. The court declines to continue exercising supplemental jurisdiction over Jenkins' state-law claims.

The Eleventh Circuit has encouraged district courts to dismiss remaining state-law claims when, as here, the federal claims have been dismissed before trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004). Because all of Jenkins' federal claims fail, the court declines to continue exercising supplemental jurisdiction over her state-law claims. *See* 28 U.S.C. § 1367(c)(3). Jenkins' state-law claims are therefore dismissed without prejudice.

## CONCLUSION

For these reasons, the court **GRANTS** Defendants' motion to dismiss (doc. 16). The court **DISMISSES** Jenkins' federal claims **WITH PREJUDICE**. The court **DISMISSES** Jenkins' state-law claims **WITHOUT PREJUDICE**. The court will enter a separate order that carries out this ruling and closes this case.

**DONE** and **ORDERED** on September 4, 2026

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE